Samuel R. Randall (Ariz. Bar No. 024517)
**RANDALL LAW PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 328-0262
randall@randallslaw.com

Michael A. Josephson (*Pro Hac Vice*)
Andrew W. Dunlap (*Pro Hac Vice*)
William M. Hogg (*Pro Hac Vice*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com

Richard J. (Rex) Burch (*Pro Hac Vice*)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
(713) 877-8788
rburch@brucknerburch.com

*Attorneys for Plaintiff and Putative Collective Members*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| Derrek Abendroth, Individually and for Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>Republic Services, Inc., a Delaware for-profit corporation and Randy's Sanitation, LLC,<br><br>    Defendants. | Case No. CV-23-00769-PHX-SMB<br><br>**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM TO APPROVE COLLECTIVE ACTION SETTLEMENT**<br><br>Judge: The Honorable Susan M. Brnovich |

# TABLE OF CONTENTS

MOTION ...................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................2

1.    INTRODUCTION .........................................................................................2

2.    PROCEDURAL AND FACTUAL HISTORY .............................................3

3.    SUMMARY OF SETTLEMENT TERMS ...................................................4

   A.    Settlement Amount and Allocation ....................................................4

   B.    Settlement Distribution Formula ........................................................5

   C.    Scope of Release .................................................................................5

   D.    Settlement Administration ..................................................................6

4.    LEGAL STANDARD ...................................................................................8

5.    ARGUMENTS AND AUTHORITIES .......................................................10

   A.    There Is a *Bona Fide* Dispute Over FLSA Liability and Damages...............10

   B.    The Settlement Should be Approved As Fair and Reasonable ..................10

      i.    The strength of the Plaintiff's case weighs in favor of approval. ...............11

      ii.    The risk, expense, complexity, and likely duration of continued litigation weigh in favor of approval. ...................................................12

      iii.    The amount offered in settlement weighs in favor of approval. ................13

      iv.    The stage of proceedings weighs in favor of approval. ................................14

      v.    The experience and views of counsel weigh in favor of approval. ...........15

6.    CONCLUSION ...........................................................................................15

**TABLE OF CONTENTS**

Page(s)

**Cases**

*Alleyne v. Time Moving,*
 264 F.R.D. 41 (E.D.N.Y. 2010) .............................................................................14

*Almodova v. City & Cty. of Honolulu,*
 No. 07–00378 DAE–LEK, 2010 WL 1372298 (D. Haw. Mar. 31, 2010) ...........................10

*Barrentine v. Ark.-Best Freight Sys., Inc.,*
 450 U.S. 728 (1981)............................................................................................8

*Bellinghausen v. Tractor Supply Co.,*
 306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................... 11, 14

*Custom LED v. eBay, Inc.,*
 No. 12-cv-350, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ..................................14

*Fontes v. Drywood Plus, Inc.,*
 No. 12-cv-1901-PHX-LOA, 2018 WL 6228652 (D. Ariz. Dec. 2, 2013) ......................9

*Glass v. UBS Fin. Serv., Inc.,*
 No. 06-cv-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...................................14

*Goudie v. Cable Communications, Inc.,*
 No. 08-507-AC, 2009 WL 88336 (D. Or. Jan. 12, 2009)............................................9

*In re Omnivision Techs., Inc.,*
 559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................................14

*Jones v. Agilysys, Inc.,*
 No. C 12-03516 SBA, 2014 WL 108420 (N.D. Cal. Jan. 10, 2014) ...........................8

*Juvera v. Salcido,*
 No. CV-11-2119-PHX-LOA, 2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ...................8

*Khanna v. Inter-Con Sec. Sys., Inc.,*
 No. 09-cv-2214, 2013 WL 1193485 (E.D. Cal. Mar. 22, 2013) ................................9

*Khanna v. Inter-Con Sec. Sys., Inc.,*
 No. 09-cv-2214, 2014 WL 1379861 (E.D. Cal.  Apr. 8, 2014) .......................... 10, 12

*Larsen v. Trader Joe's Co.,*
 No. 11-cv-05188, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ..............................15

*Lynn's Food Stores, Inc. v. United States,*
 679 F.2d 1350 (11th Cir. 1982) ....................................................................... 9, 11

*McKeen-Chaplin v. Franklin Am. Mortg. Co.,*
 No. 10-cv-5243, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012).............................10

*Nichols v. Smithkline Beecham,*
 No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 16, 2005) .......................................14

*Officers for Justice v. Civil Serv. Comm.,*
  688 F.2d 615 (9th Cir. 1982) .................................................................................12

*Quintana v. Health Plan One LLC,*
  No. CV-18-02169-PHX-RM, 2019 WL 3342339 (D. Ariz. July 25, 2019) .........11

*Selk v. Pioneers Mem'l Healthcare Dist.,*
  159 F. Supp. 3d 1164 (S.D. Cal. 2016) .............................................................. 10, 11

*Villarreal v. Caremark LLC,*
  No. CV-14-00652-PHX-DJH, 2016 WL 5938705 (D. Ariz. May 10, 2016)..........9

*Wagner v. County of Inyo,*
  No. 1:17-cv-00969, 2018 WL 5099761 (E.D. Cal. Oct. 18, 2018) .........................9

*Yue Zhou v. Wang's Restaurant,*
  No. 05-cv-0279, 2009 WL 2298046 (N.D. Cal. Aug. 8, 2007)................................8

**Statutes**

29 U.S.C. § 216 ...............................................................................................4, 7

29 U.S.C. § 255 ...................................................................................................11

29 U.S.C. § 260 ...................................................................................................11

**MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Derrek Abendroth submits this Motion on the grounds that he and Defendants Republic Services, Inc. ("Republic") and Randy's Sanitation, LLC ("Randy's") (together, "Defendants") (Plaintiff and Defendants are collectively referred to as the "Parties") have reached an agreement in principle to resolve all issues, claims, and disputes related to this lawsuit. As further explained in the following Memorandum or Points and Authorities, the Parties successfully negotiated and reached a settlement of the Fair Labor Standards Act ("FLSA") collective action claims in this lawsuit and entered into a written settlement agreement (the "Agreement").[1] Abendroth accordingly moves this Court for an order granting:

(1) Approval of a proposed settlement agreement on behalf of himself and a proposed collective consisting of 61 other individuals who performed work as a Waste Disposal Driver for Randy's at the St. Michael location at any time from May 3, 2020 through the Effective Date of the Agreement;

(2) Certification of a collective action pursuant to 29 U.S.C. § 216(b) for settlement purposes only;

(3) Approval of the Notice of Collective Action Settlement;

(4) Appointment of Plaintiff's Counsel as Collective Action Counsel;

(5) Appointment of Abendroth as the Collective Representative; and

(6) Appointment of ILYM Group, Inc. as the third-party claims administrator which will mail the Notice Packet and administer the settlement process.

---

[1]  Plaintiff is concurrently lodging a redacted version of the Agreement with the Court in compliance with LRCiv 5.6(b) and (c). All references to the document lodged with the Court are as "Exhibit 1." Plaintiff also is filing the entire Agreement under seal in conjunction with the Joint Motion to File Settlement Agreement Under Seal.

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.    INTRODUCTION**

This is an action filed under the Fair Labor Standards Act ("FLSA"), and Minnesota state law, in which Plaintiff Derrek Abendroth seeks recovery of unpaid overtime wages allegedly due owe and owing to him due to off-the-clock work, unpaid meal breaks, and due to a malfunction, or "outage," of Defendants' timekeeping software called "Kronos" that Abendroth alleged affected not only him, but a group of similarly situated current and former workers. Defendants deny Abendroth's allegations, deny that his claims are appropriate for collective treatment, and dispute his entitlement to damages. After extensive arm's-length settlement negotiations between experienced wage-and-hour attorneys spanning multiple months, the Parties reached an agreement to resolve the dispute on a class-wide basis, subject to Court approval.

The Parties have executed a written settlement agreement that was executed as the result of good faith, arm's-length negotiations between experienced counsel. Pursuant to a confidentiality provision in the Agreement, Abendroth is concurrently lodging the Agreement under seal for the Court's consideration. This settlement is an outstanding recovery for the Collective Members and reflects the diligent and skilled work of Collective Action Counsel. The Complaint filed approximately one year ago was brought on behalf of drivers who were allegedly denied all wages owed due to meal period deductions and/or due to a Kronos outage. After extensive factual investigation and negotiation between counsel, it was discovered that these claims were limited to a small group of workers in Minnesota, as reflected in Abendroth's recent amendment to the Complaint. The proposed settlement covers all of these workers and results in an excellent recovery for all of the putative collective members who elect to participate.

Under the proposed settlement (if approved), Defendants, through their counsel, will provide the Claims Administrator with the list of Collective Members (subject to a confidentiality agreement), who will calculate each Collective Members' *pro rata* share of the

settlement fund based on their qualifying workweeks. The Claims Administrator will mail out the Notice Packet to each Collective Member, which will include the Notice, a Claim and Opt-in Form, a Form W-4, a Form W-9, and a self-addressed pre-paid return envelope. Defendants will submit the settlement funds to the Claims Administrator to hold in a qualified settlement fund pending disbursement as settlement payments to the Collective Members.

**2.    PROCEDURAL AND FACTUAL HISTORY**

Abendroth filed this lawsuit as a putative class and collective action on May 3, 2023 on behalf of non-exempt drivers who allegedly (a) received a meal period deduction, (b) were required to conduct vehicle preparation activities pre-shift before clocking-in for their shifts, and (c) were affected by the Kronos outage. *See* ECF No. 1. The original scope of Abendroth's lawsuit was, for the FLSA claim, all of Republic's drivers nationwide who allegedly were affected by these issues at any time from May 3, 2020 through final resolution of the lawsuit and, for the Minnesota state law claim, all of Republic's drivers in Minnesota for the same time period. Republic answered the lawsuit on June 13, 2023, denying the allegations and asserting various defenses. *See* ECF No. 15.

Shortly following Republic answering the lawsuit, and for the ensuing months thereafter, the Parties engaged in informal discovery and exchange of damages calculations necessary to evaluate the proper scope of the putative collective action, the strengths and weaknesses of the case, and the risks of continued litigation. The Parties also engaged in protracted settlement negotiations for months, followed by months spent drafting and revising the proposed settlement agreement papers. Following finalization of the settlement agreement papers, the Parties stipulated to amend the complaint to add Randy's as a named defendant, narrow the scope of the FLSA collective action allegations, and dismiss the Rule 23 class action aspect of the Minnesota state law claims. *See* ECF No. 27.

Section 216(b) of the FLSA permits a plaintiff to file a collective action on behalf of himself and others "similarly situated" to recover unpaid overtime wages. *See* 29 U.S.C. §

216(b). For purposes of this settlement, the Parties stipulate and agree[2] that the Collective Members are similarly situated under 29 U.S.C. § 216(b). For the reasons set forth herein, the Court should grant collective action certification for settlement purposes and approve the proposed settlement as a reasonable resolution of a *bona fide* dispute.

**3.    SUMMARY OF SETTLEMENT TERMS**

    **A.    Settlement Amount and Allocation**

The Parties have agreed to fully and finally resolve the claims in this action for a maximum gross settlement amount of ▮▮▮▮▮. Defendant has agreed to pay the Gross Settlement Amount to settle the claims in this action. This amount comprises all potential payments to the Collective Members, the maximum amount of attorneys' fees, litigation costs/expenses related to the action, Claims Administration costs, and the individual service award to Abendroth (the "Gross Settlement Amount"). *See* Exhibit 1 at Sec. 2.S. Employer-side payroll taxes that Defendants are required to pay arising out of settlement payments to any Collective Members are excluded from the Gross Settlement Amount. *Id.* at Sec. 2.P.

After all Court-approved deductions to the Gross Settlement Amount, including the requested amounts to Plaintiff's Counsel's for attorneys' fees (▮▮▮▮▮), litigation costs/expenses (▮▮▮▮), to Abendroth as a service/enhancement award in exchange for a general release and as recognition for the inherent risk in bringing the case and in his assistance in moving the case forward (▮▮▮▮▮), and for the Claims Administration costs (▮▮▮▮▮), the estimated remaining net settlement amount that Defendants will possibly pay to the Collective Members (assuming a 100% opt-in rate) will be ▮▮▮▮▮ ("Gross Member Payments"), subject to Court approval. *Id.* at Sec. 2.E and 2.R.

The Agreement contemplates a service/enhancement payment to Abendroth in the amount of ▮▮▮▮ to acknowledge his service to the case, as well as to compensate him for a general release. *Id.* at Sec. 2.E and Sec. 19. While Abendroth is entering into a general release,

---

[2]    Defendants reserve the right, should the Court not grant approval of the Settlement, to contest collective action certification.

1    Collective Members' releases will be strictly limited to wage-and-hour claims.

2         **B.     Settlement Distribution Formula**

3         The settlement award calculations are based on the number of workweeks that a

4    Collective Member both (i) worked as a Waste Disposal Driver, and (ii) recorded more than

5    36 hours of work during that week, at any time from May 3, 2020 through the Effective Date

6    of the Settlement ("Qualifying Workweeks"). *Id.* at Sec. 2.AA. The Claims Administrator will

7    determine the *pro rata* share of the settlement payments; the settlement award calculations are

8    based on a formula taking into account that there are ■ potential Collective Members, who

9    worked as estimated ▇ Qualifying Workweeks during the relevant time period. *Id.* at Sec.

10   27(a). Based on the Gross Member Payments, the number of potential Collective Members,

11   and the number of estimated Qualifying Workweeks, he estimated fixed workweek value will

12   average approximately ▇ per Qualifying Workweek. *Id.* For example, if a Collective

13   Member worked 25 Qualifying Workweeks (or approximately 6 months), that individual

14   would be eligible to receive a gross settlement payment of ▇ (before taxes) under the

15   settlement.

16        **C.     Scope of Release**

17        Pursuant to the Agreement, individuals who elect to participate in the settlement will

18   release and discharge the following parties:

19            Republic, Randy's, and their past, present, and future parent
20            companies, affiliates, subsidiaries, divisions, predecessors,
             successors, partners, owners, joint venturers, joint employers,
21            affiliated organizations, shareholders, insurers, reinsurers and
             assigns, each of their past, present and future officers,
22            directors, trustees, agents, employees, attorneys, contractors,
             representatives, plan fiduciaries and/or administrators,
23            benefits plans sponsored or administered by Republic or
             Randy's, divisions, units, branches and any other persons or
24            entities acting on their behalf or under, by, through, or in
             concert with them, including any party that was or could have
25            been named as a defendant in the Lawsuit ("Releasees").

     *See* Exhibit 1 at Sec. 2.DD.
26
          By filling out, signing, and submitting a Claim and Opt-in Form, Collective Members
27

28

will be releasing the Releasees from:

> [A]ll wage and hour claims under federal, state or local law that were brought, or could have been brought, in the Lawsuit for the entire Class Period. Specifically, the Settlement release includes, for the Class Period, and to the extent permitted by law, any and all claims, known or unknown, contingent or accrued, against the Releasees, arising under the FLSA and/or any and all state wage and hour laws from the claims and the allegations in, or the claims that could have been asserted based on the allegations in the Complaint during the Class Period. The releases pursuant to this Agreement do not include any claim that cannot be released by private agreement. Moreover, nothing in this Agreement prohibits or prevents a Settlement Collective Member from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency, including but not limited to the Equal Employment Opportunity Commission, the Securities and Exchange Commission, or the National Labor Relations Board. Nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, a Settlement Collective Member's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. This release does not apply to any Settlement Collective Member's benefit, right, claim, demand, complaint or cause of action under 29 U.S.C. 1132(a)(1)(B) or benefits accrued and under any employee benefit plan.

*Id.* at Sec. 18.[3]

If a Collective Member does not wish to participate in the settlement, then he/she will not release any claims (wage and hour or otherwise) against Defendants or Releasees.

### D.    Settlement Administration

As a measure of protection and to add a layer of confidentiality to the settlement administration process, Defendants insisted on using a neutral third-party settlement administrator to administer the settlement. Counsel for both parties are familiar with ILYM, know ILYM to be of reputable character and to generally do good work in the class/collective settlement administration field, and are agreeable to using their services as the Claims

---

[3]    For good measure, Collective Members will also be given this same language regarding the scope of the Releasees and the release in the Notice and Claim and Opt-in Form. *See* Exhibit 2.

Administrator here pursuant to the Agreement. The Claims Administrator will handle the administration of the Settlement, including sending notice, receipt of claims, and processing/mailing of settlement payments to participating Collective Members. The Claims Administrator will update the addresses through public National Change of Address database and then mail to each individual the Notice, Claim and Opt-in Form, Form W-4, Form W-9, and a prepaid return envelope. *See* Exhibit 2.

The Notice informs the recipient (1) how much they are expected to receive from the settlement if they elect to join, (2) accurately describes what the case is about, (3) informs the recipient what their rights and options are, (4) notes that the Defendants deny the allegations and states the Court is neutral on the merits, (5) provides salient details about the settlement, (6) gives detailed procedures the recipient must follow, and (7) provides the Claims Administrator's contact information if the recipient has additional questions; all of which allow for the recipient to make an informed and knowing decision about whether to participate in the collective action settlement. *See* Exhibit 1.

The Claim and Opt-in Form complies with the requirements of 29 U.S.C. § 216(b) as it includes language stating "by completing and signing this Claim and Opt-in Form … I hereby consent and agree to join this lawsuit in order to participate in and be bound by the collective action Settlement entered into by Plaintiff and Defendants, as set forth on the next page and in the Notice attached hereto." *See* Exhibit 3. The form also includes language stating the signer designates Plaintiff's Counsel as their chosen counsel to represent them in the action. *Id.* The form also states that the signed understands they are releasing the Releasees from FLSA claims and all other wage claims. *Id.* The form, as well as the Notice, also includes the full release language on the next page. *See* Exhibit 2 and 3. Timely return, and filling out the complete Claim and Opt-in Form (signature, printed name, current residential address, email, and telephone numbers), and completing Forms W-4 and Form W-9, are all that is required for opting-in to the Collective Action Settlement and receiving the applicable distribution pursuant to the Agreement. Collective Members will have 60 days from the date

of mailing to postmark or electronically submit completed forms. The Claims Administrator will send a reminder notice by mail and email to Collective Members at the 30-day mark. *See* Exhibit 1 at Sec. 28(a).

During the notice period, the Claims Administrator shall send, on a weekly basis, a tracking spreadsheet that informs the Parties' counsel (i) when notice packets were mailed; (ii) when notice packets were reissued due to being undeliverable; (iii) whether notice packets were undeliverable and had a forwarding address; (iv) whether a notice packet was forwarded to a new address; (v) whether notice packet was undeliverable and did not contain a forwarding address; (vi) whether a skip trace was performed; (vii) whether the skip trace provided a new mailing address for the Collective Member; (viii) whether the notice packet was mailed to the skip traced address; (ix) when Claim Forms were received; (x) whether a deficiency letter was issued due to receive of a deficient Claim Form; (xi) whether a corrected Claim Form was resubmitted; and (xii) when the corrected Claim Form was received. *Id.* at Sec. 29.

The Claims Administrator will also provide the Parties' counsel interim reports on the total number of Eligible Settlement Collective Members who were sent the Notice Packet, a copy of each completed Claim and Opt-in Form; the total Settlement Award due each Settlement Collective Member, a calculation of Employer Payroll Taxes; and wiring instructions. *Id.* at Sec. 30.

## 4. LEGAL STANDARD

"Unlike most private settlements negotiated between parties in a civil action for damages, in a FLSA case[], the parties must seek the district court's approval of the settlement's terms to ensure that it is enforceable and fair." *Juvera v. Salcido*, No. CV-11-2119-PHX-LOA, 2013 WL 6628039, at *3 (D. Ariz. Dec. 17, 2013) (citations omitted). Settlement of collective actions under the FLSA requires the approval of the Court or the Secretary of Labor. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279, 2009 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA should be approved. *Wagner v. County of Inyo*, No. 1:17-cv-00969, 2018 WL 5099761 (E.D. Cal. Oct. 18, 2018). However, courts in the Ninth Circuit generally follow guidance from the *Lynn's Food* decision out of the Eleventh Circuit *See Villarreal v. Caremark LLC*, No. CV-14-00652-PHX-DJH, 2016 WL 5938705, at *2 (D. Ariz. May 10, 2016).

If a settlement reflects a "reasonable compromise over issues, such as … computation of back wages, that are actually in dispute," the district court may approve the settlement "in order to promote the policy of encouraging settlement of the litigation." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). In reviewing a FLSA settlement, the Court's role is to "ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes." *Goudie v. Cable Communications, Inc.*, No. 08-507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009). Once it establishes there is a *bona fide* dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of FLSA settlements, while recognizing that some of those factors do not apply because of the inherent differences between Rule 23 class actions and FLSA collective actions. *Wagner*, 2018 WL 5099761, at *3; *Fontes v. Drywood Plus, Inc.*, No. 12-cv-1901-PHX-LOA, 2018 WL 6228652 (D. Ariz. Dec. 2, 2013); *Khanna v. Inter-Con Sec. Sys., Inc.*, No. 09-cv-2214, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Inter-Con Sec. Sys., Inc.*, No. 09-cv-2214, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8,

2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), *adopted* at, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). In settling FLSA collective actions, district courts in this circuit have adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016). Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute should be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-5243, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

**5.    ARGUMENTS AND AUTHORITIES**

**A.    There Is a *Bona Fide* Dispute Over FLSA Liability and Damages**

Abendroth's, as well as the Collective Members', entitlement to overtime, their ability to obtain conditional certification, survive decertification, their ability to maintain a certified collective through trial, and the amount of overtime allegedly due, are all material issues that Defendants vigorously disputed. The settlement reflects compromise on all of these disputed issues.

The settlement occurred only after the Parties engaged in significant exchange of information, which included exchange of documents, data, and information about the scope of range of Defendants' employees potentially affected by the alleged Kronos "outage." Additionally, the settlement was the result of months' worth of arm's-length negotiations between attorneys who are experienced in wage-and-hour class and collective actions similar to the present case. Recognizing the uncertain legal and factual issues involved, the Parties ultimately reached the settlement after several months of negotiations. Accordingly, the Parties had a bona fide dispute, and continue to dispute the merits of their claims and defenses, prior to reaching their proposed settlement.

**B.    The Settlement Should be Approved As Fair and Reasonable**

To be approved, a FLSA settlement agreement must constitute a "fair and reasonable resolution of a bona fide dispute." *Quintana v. Health Plan One LLC*, No. CV-18-02169-PHX-RM, 2019 WL 3342339, at *1-2 (D. Ariz. July 25, 2019); *Lynns' Food Stores*, 679 F.2d at 1352-53. To find a bona fide dispute, "[t]here must be 'some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Id.* at *1 (quoting *Selk*, 159 F. Supp. 3d at 1172).

### i.    The strength of the Plaintiff's case weighs in favor of approval.

The proposed settlement is fair and reasonable given the strength of Abendroth's case. The Court should consider whether "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). While Abendroth is confident in his claims and maintains he has a strong case, it must be noted that Defendants deny all alleged liability and deny that Abendroth or any other Collective Members worked unpaid overtime, or that the alleged Kronos "outage" resulted in any unpaid wages. Defendants further deny that Republic employed Abendroth or any of other Collective Member.

Indeed, Defendants maintained that work performed during meal periods or before clocking in (if any) would have been done without Defendants' knowledge and/or as a result of not following Defendants' policies and practices. Defendants further maintained that such off-the-clock work would have rendered collective action treatment difficult. Defendants also argued that any such off-the-clock work, including any missing work time due to the alleged Kronos "outage," would have been *de minimis* and therefore non-compensable. Further, these issues would be hurdles because such policies, if reduced to writing, would have been utilized by Defendants as evidence to dispute Abendroth's claims of willfulness, which would reduce the potential FLSA limitations period from the maximum three-years to two-years. *See* 29 U.S.C. § 255(a). Such evidence may also be used toward Defendants' "good faith" defense, which would impact an award of liquidated damages. *See* 29 U.S.C. § 260. All of these arguments were taken into consideration as risk factors during settlement negotiations and

represent hurdles Abendroth would need to overcome during litigation if the case did not settle.

While the strength of the case is an important consideration, "'the settlement or fairness hearing is not to be turned into a rehearsal for trial on the merits,' and the court is not 'to reach any ultimate conclusions on the merits of the dispute…'" *Khanna*, 2014 WL 1379861, at *7 (quoting *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 626 (9th Cir. 1982)). This factor supports settlement approval.

> ### ii.    The risk, expense, complexity, and likely duration of continued litigation weigh in favor of approval.

In addition to the above risks, Abendroth faced the additional risks absent settlement. For example, Abendroth only worked in Minnesota yet was initially seeking to certify a nationwide collective of individuals. Republic would have argued that it had no liability because it was not an employer under the FLSA, which would have been a significant risk for Abendroth to overcome.

Even if the Court conditionally certified the collective, Abendroth faced additional material risks and further litigation with an inevitable motion to decertify any conditionally certified collective or, alternatively, decertify certain groups of opt-in plaintiffs in any conditionally certified collective. Abendroth faced further risks if Republic moved for summary judgment on employer status or sought summary judgment on its asserted defenses. Further, if Abendroth survived conditional certification, decertification, and summary judgment, proceedings, he would still face uncertainty and risks associated with proving the claims at a collective trial.

A trial involving the claims of dozens or hundreds of opt-in plaintiffs and the defenses raised by Republic with respect to the collective, and to individual collective members, would have posed its own set of complexities, ranging from various legal and factual issues and proof issues, to coordinating testifying opt-ins from states around the country. There would have been challenges to the collective action trial on manageability grounds for Abendroth to

overcome. The Parties would also likely present competing trial plans to the Court for consideration in managing a collective action trial. Post-trial litigation, including appeals, would be a near certainty, and Abendroth would face material outcome-determinate risks at each and every procedural point in this case through appeal.

With respect to expense, additional litigation would undoubtedly increase the expenses and complexity of this case. Absent settlement, Abendroth and Plaintiff's counsel would be required to incur the time and expense of remaining fact depositions, expert depositions, class/collective-wide discovery, and final fact and merits discovery. If a nationwide collective had been conditionally certified, the expense of issuing notice and opt-in forms to hundreds of individuals would have cost thousands of dollars for a third-party administrator to handle. The Parties would have also incurred additional expense and costs of summary judgment motion practice. Trial preparation and conducting a trial of this type of case, which would require witnesses, counsel, and possibly experts to be flown in from across the county, would require substantial additional expenses. For these reasons, the risk, expense, complexity, and duration of further litigation in this case are factors that weigh in favor of approving the settlement.

### iii. The amount offered in settlement weighs in favor of approval.

At ▇▇▇ per Qualifying Workweek, the proposed settlement payments amount to nearly a full hour of unpaid overtime per week. After exchanging data and confirming the proper scope of the class at issue, Abendroth calculated the potential damages to be approximately ▇▇▇ per workweek under a "best possible day at trial" scenario, including all liquidated damages, interest, and statutory damages into that calculation. The settlement results represents a recovery of approximately 24% of the maximum potential recovery, which is well within the range of reasonableness for similar wage-and-hour class/collective action settlements. Given the risks, the factual and legal issues in this case, and the fact that the settlement is pre-certification and allows for a guaranteed payment now rather than the uncertain chance of payment after lengthy litigation, the settlement amount in this case is an

excellent result for the Collective Members. Courts routinely approve settlements within this range of recovery, and lower, as reasonable. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (affirming settlement representing 9% of maximum potential recovery); *Bellinghausen*, 306 F.R.D. at 256 (finding wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Custom LED v. eBay, Inc.*, No. 12-cv-350, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) (1.8% to 16% of maximum recovery approved as reasonable); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) (finding wage and hour settlement between 25% to 35% of claimed damages fair and reasonable); *Alleyne v. Time Moving*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (FLSA settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery); *Nichols v. Smithkline Beecham*, No. 00-6222, 2005 WL 950616, at *16 (E.D. Pa. Apr. 16, 2005) (approving settlement representing between 9.3% and 13.9% of the claimed damages).

Here, the proposed settlement is well within the range of reasonableness commonly approved by courts, as it equates to approximately 24% of unpaid weekly overtime. This confirms the amount offered in settlement is fair, adequate, and reasonable. This factor weighs in favor of granting approval.

### iv.    The stage of proceedings weighs in favor of approval.

Although discovery is not complete, the Parties engaged in substantial exchange of information, including exchanging damages calculations and reaching formal agreement to narrow the scope of the putative collective to the appropriate group of the employees potentially affected by the allegations in the case. The Parties conducted informal discovery, carefully investigated the claims and facts alleged in this action, took action to tailor the case appropriately by stipulating to amend the Complaint to reflect the needs of that investigation, and have made a thorough study of the legal principles applicable to the claims in this action and a careful review of information available. The Parties have participated in arm's-length,

good faith, and extensive negotiations conducted by counsel who are experienced in wage-and-hour class and collective actions. Thus, the stage of litigation has advanced to a stage where Plaintiff's Counsel and Defense Counsel can both fully and fairly evaluate the claims and defenses, and assess the value of the settlement on a mutually fair and reasonable playing field. This factor weighs in favor of approving the settlement.

**v.** **The experience and views of counsel weigh in favor of approval.**

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014). Plaintiff's Counsel are experienced in class and collective action wage and-hour litigation. *See* Declaration of William Hogg. Plaintiff's Counsel had a substantial amount of time and information to evaluate, negotiate, and make well-informed judgments about the adequacy of the settlement. *Id.* In Plaintiff's Counsel's opinion, the settlement is fair, reasonable, and adequate. *Id.* Accordingly, this factor weighs in favor of approval.

**vi.** **There is no fraud or collusion behind the settlement.**

This settlement was the result of intense adversarial, arm's-length negotiations that took place over months, and after conducting informal discovery and exchanging detailed information. The parties took a reasonable approach by exchanging data they knew would be useful in evaluating potential liability, risks, and damages, and by also exchanging estimated damage models to assist each other in evaluating the risks and liabilities involved. As explained above, the terms of the Settlement were reached during extensive negotiations by experienced counsel after thorough investigation and analysis, and the terms of the settlement were reached only after months of negotiations and considerable exchange of information. The foregoing demonstrates the proposed settlement is fair and reasonable, and not the result of any kind of fraud or collusion.

**6.** **CONCLUSION**

1    For the reasons discussed herein, Abendroth respectfully request the Court (i) approve

2  the settlement as a fair and reasonable resolution of a *bona fide* dispute of FLSA claims; (ii)

3  enter the Order attached hereto granting FLSA collective action certification for settlement

4  purposes and approving the Parties' settlement agreement; and (iii) grant such further

5  relief as the Court deems just and equitable.

6

7  Date: June 26, 2024                              Respectfully submitted,

8

9                                                   /s/ William M. Hogg
                                                    Samuel R. Randall
10                                                  **RANDALL LAW PLLC**
                                                    4742 North 24th Street, Suite 300
11                                                  Phoenix, Arizona 85016
                                                    (602) 328-0262
12
                                                    Michael A. Josephson
13                                                  Andrew W. Dunlap
                                                    William M. Hogg
14                                                  **JOSEPHSON DUNLAP LLP**
                                                    11 Greenway Plaza, Suite 3050
15                                                  Houston, Texas 77046

16                                                  Richard J. (Rex) Burch
                                                    **BRUCKNER BURCK PLLC**
17                                                  11 Greenway Plaza, Suite 3025
                                                    Houston, Texas 77046
18                                                  (713) 877-8788

19                                                  *Attorneys for Abendroth and Putative Collective*
                                                    *Members*
20

21                           **CERTIFICATE OF SERVICE**

22    This is to certify that on June 26, 2024, a true and correct copy of the foregoing

23  instrument was served via the Court's electronic filing system.

24                                                  /s/ William M. Hogg
25                                                  William M. Hogg

26

27

28

**CERTIFICATE OF CONFERENCE**

  This is to certify that I have conferred with counsel for Defendants regarding the above Motion, and Defendant is unopposed.

           /s/ William M. Hogg
           William M. Hogg